IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 03-cv-2412-WDM-PAC

KIMBERLY L. ROSENBERGER,

    Plaintiff,

v.

CATHOLIC HEALTH INITIATIVES, COLORADO, d/b/a PENROSE-ST. FRANCIS HEALTH SERVICES/CENTURA-HEALTH,

    Defendant.

_____

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
_____

Miller, J.

This matter is before me on Defendant's Motion for Summary Judgment, filed November 5, 2004. I have reviewed the parties' written arguments and tendered evidence and conclude oral argument is not required. For the reasons stated below, the motion will be granted in part and denied in part.

### Background

Plaintiff Kimberly L. Rosenberger (Rosenberger) asserts claims under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* and the Colorado Anti-Discrimination Act (CADA), as well as two state tort claims for violations of her rights to privacy. Defendant Catholic Heath Initiatives, Colorado (CHIC) has moved for summary judgment on all claims.

Rosenberger began working for CHIC as a respiratory therapist on November 4, 2002 at its Penrose-St. Francis Hospital (Penrose). On December 18, 2002, while off-duty, Rosenberger suffered an epileptic seizure, and was transported to the emergency room (ER) at Penrose. After entering the ER, Mary Triller, the respiratory therapist on duty, approached Rosenberger. The facts are disputed as to their conversation: CHIC asserts that Rosenberger assented when Triller asked her if she wanted to see Monica Ramsel, Rosenberger's supervisor. Rosenberger, on the other hand, asserts that Triller told her that Triller was going to get Ramsel, even though Rosenberger asked her not to. In any case, Triller left the emergency room and went upstairs to the respiratory department and told Ramsel that Rosenberger was in the emergency room and wanted Ramsel to see her. (Triller Dep., at 13.)

Ramsel went to the ER and entered the cubicle in which Rosenberger was lying. Although Rosenberger never told Ramsel to leave, when the ER doctor arrived to assess Rosenberger, he stated "[t]here goes the medical confidentiality." (Rosenberger Dep., at 30.) Ramsel left after the doctor's comment. Like any patient at Penrose, Rosenberger was entitled to the hospital's policies regarding patient privacy.

Approximately 30-40 minutes later, Ramsel returned to Rosenberger's cubicle and sat with her until she was discharged. (Rosenberger Dep., at 33-34.) Ramsel drove Rosenberger home and provided her with a hospital cell phone to call her parents and helped her mail a package. (*Id.* at 36-37.)

Rosenberger returned to work on her next two scheduled shifts, on December 21 and 22. However, on December 23, she was called by both Ramsel and Gina Wamble, a registered nurse from Employee Health, and told that she could not return to work until she received clearance from a neurologist.[1] She was not able to see a neurologist until January 7, 2003, when she saw Dr. Patricia Fodor. Dr. Fodor changed her medication, and authorized her to return to work effective January 13, 2003. When she returned to work, she found that Ramsel and Triller had told her coworkers about her epileptic episode and seizure disorder.

Both before and after her seizure, Ramsel had problems with her "documentation in regards to her patient care," although it is unclear how frequent her errors were. (Ramsel Dep., at 46, 47.) When Ramsel attempted to "counsel" her on this problem, Ramsel acted defensively. (*Id.* at 48.)[2] Additionally, at some point, a doctor at Penrose complained that Rosenberger spent to much time in his "personal space." (*Id.* at 51.)

On March 13, 2003, Ramsel drafted a Performance Improvement Plan, in which she noted that Rosenberger's performance was inadequate for the following reasons: (1) too much time spent socializing instead of working; (2) responding

---

[1]Although Rosenberger asserts she was placed on "unpaid" administrative leave for this period, there is no evidence in the record supporting this assertion.

[2]Rosenberger asserts that there were no allegations of substandard performance prior to December 18, 2002, and that the first documented instance of allegedly unsatisfactory performance occurred less than two weeks after Plaintiff returned to work in January 2003. Again, she provides no citation to the record.

3

defensively to constructive criticism; (3) failing to seek guidance when unsure about procedure; (4) gossiping about other staff members; and (5) having a negative attitude. Ramsel closed the document by noting "[i]mprovement must be immediate and consistent in both clinical and performance behaviors if you want to stay here," and providing that a reevaluation would occur on April 10, 2003. (Def.'s Ex. D.)

However, March 27, 2003 was the last night that Rosenberger worked at Penrose. (Rosenberger Dep., at 59.) Although it was a busy night in the Intensive Care Unit (ICU), where Rosenberger was working, one of her co-workers, Denise Darling, claimed that Rosenberger took a 75-minute meal break on a busy night. Rosenberger, however, denied to Ramsel that she had taken such a long break, and at her deposition, she testified that she only took a 45-minute break, and that the length was authorized under hospital policy. (Rosenberger Dep., at 61.) According to CHIC, Rosenberger also failed to respond to a registered nurse's request that she aid a patient in the ICU, forcing the nurse to ask another respiratory therapist to help the patient.

Rosenberger was placed on suspension pending an investigation, and terminated April 2, 2003. (*Id.* at 63.) She contested her termination before a "problem solving panel," but the panel approved her termination.[3]

---

[3]CHIC also refers to the fact that in January 2004, Rosenberger was dismissed from a subsequent job as a respiratory therapist for performance issues. Rosenberger argues that evidence of this subsequent discharge is irrelevant. This evidence may well be objectionable under Rules 403 and 404 of the Federal Rules of

4

Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The nonmoving party must set forth facts showing that there is a genuine issue for trial. The court views the record in the light most favorable to the party opposing the summary judgment motion. *Cummings v. Norton*, 393 F.3d 1186, 1189 (10th Cir. 2005). A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986).[4]

Discussion

CHIC argues that Rosenberger's ADA claim must be dismissed because she cannot establish a prima facie case, and even if she could, she cannot demonstrate that its reason for discharging her was pretextual.

To prevail on an ADA discrimination claim, a plaintiff must establish that: (1) she is a disabled person as defined by the ADA; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or

---

Evidence, and is not considered by me in arriving at my decision.

[4]Rosenberger asserts that CHIC may only obtain summary judgment if "the evidence points but one way and is susceptible to no reasonable inferences supporting the opposing party," citing to *Mallinson-Montague v. Pocrnick*, 224 F.3d 1224, 1228 (10th Cir. 2000). As that case makes clear, that standard is inapplicable here, as it applies to a motion for judgment as a matter of law after presentation of evidence at trial, pursuant to Fed. R. Civ. P. 50(a).

desired; and (3) the employer discriminated against her because of her disability.[5] *Doyal v. Oklahoma Heart, Inc.*, 213 F.3d 492, 495 (10th Cir. 2000).

CHIC argues that Rosenberger cannot meet the second prong, as she was not qualified to work as a respiratory therapist because of her substandard performance. However, under the plain language of the statute, the question of whether a plaintiff is qualified to perform the essential functions of a job is whether the plaintiff "can," i.e., has the capacity, to do the job in question.  *See* 42 U.S.C. § 12111(8) (defining a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires").  *See also Tate v. Farmland Indus.,* Inc., 268 F.3d 989, 993 (10th Cir. 2001) (plaintiff must satisfy "the requisite skill, experience, education and other job-related requirements of the employment position" and be able to perform the essential functions of an employment position).  Although, according to CHIC, Rosenberger was "not attending work and leaving the ICU unattended," there is no suggestion that she was unable to attend work or not neglect her responsibilities in the ICU.  (*See* Mot. Summ. J., at 9.)

However, CHIC also argues that Rosenberger could not "satisfy the requisite skill, experience, education and other job-related requirements of the employment

---

[5]The Tenth Circuit has alternatively required under the third prong, in the case of discriminatory discharge, a showing that "the employer terminated her employment under circumstances which give rise to an inference that the termination was based on her disability." *Morgan v. Hilti, Inc.*, 108 F.3d 1318, 1323 (10th Cir. 1997).

position," and notes difficulties mastering basic skills, having trouble finishing a diagnostic test, etc., documented by the termination document from a subsequent job as a respiratory therapist. (Mot. Summ. J., at 8.) Despite bearing the burden of raising a genuine issue of fact on each element of her prima facie case, Rosenberger provides no evidence whatsoever of her qualifications, past job history, etc., but merely asserts, that "[n]othing in the facts or in Defendant's argument supports that statement and the fact that Plaintiff was educated, graduated, certified as a respiratory therapist before coming to Defendant, and maintains a position as of this writing." (Pl.'s Resp., at 11.)[6] Neither does she demonstrate that her seizure disorder "substantially affects a major life activity" under the first prong, *see Spradley v. Custom Campers, Inc.*, 68 F. Supp. 2d 1225, 1232 (D. Kan. 1999) (questioning whether plaintiff had established that his seizure disorder qualified as a disability under the ADA), nor, under the third prong, that there is evidence of discriminatory intent. A plaintiff's burden in demonstrating a prima facie case is "not onerous . . . but it is also not empty or perfunctory." *Morgan*, 108 F.3d at 1323-24 (internal citations omitted). Rosenberger has failed to meet this burden.[7]

---

[6]It is well-established that "statements of counsel are not summary judgment evidence." *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1025 (10th Cir. 1992).

[7]Rosenberger notes that her ADA claim relies not only on her discharge, but also her administrative leave following her seizure. However, my finding that she failed to make her prima facie case applies to this allegation as well. Furthermore, Rosenberger provides no authority that an administrative leave ordered for a safety assessment is an employment action which violates the ADA, particularly since she

Furthermore, even had she established a prima facie case, Rosenberger fails to present sufficient evidence such that a reasonable jury could find pretext under the *McDonnell Douglas* framework.  See *Hardy v. S.F. Phosphates Ltd. Co.*, 185 F.3d 1076, 1080 (10th Cir. 1999).  "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."  *Id.* (*quoting Morgan*, 108 F.3d at 1323).

Rosenberger argues that the record of her alleged performance issues began only after her seizure.  She does not support this argument with any citation to the record, and CHIC provides evidence that Ramsel raised documenting issues with Rosenberger prior to the seizure.  (Ramsel Dep., at 46-47.)

Rosenberger argues that she did not take a 75-minute break, as reported by Darley, her co-worker, and her supervisors should not have relied on the co-worker's statement.  However, in a pretext case "[it is] the perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of his own relative performance."  *Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 988 (10th Cir.1996).  Rosenberger's supervisors received two conflicting stories: she presents no reason why the decision to credit Darley's over her own was somehow indefensible.

---

fails to support her contention that the leave was unpaid with any evidence.

8

Rosenberger also argues that her "termination was driven nearly exclusively by Monica Ramsel," and Ramsel had told Rosenberger that she thought Rosenberger's condition was a threat to patient safety. (Pl.'s Resp., at 12.) For this assertion, Rosenberger relies on a conversation between Rosenberger and Ramsel, in which Rosenberger asked Ramsel why she had contacted Employee Health following the seizure incident, and Ramsel responded that she was concerned that Rosenberger would be a threat to the patients if she had another seizure. (Rosenberger Dep., at 47.) Such a concern at that time–immediately following the seizure–was not unreasonable. In any case, there is no indication that she ever voiced similar concerns after Rosenberger's neurologist authorized her return to work.

Finally, Rosenberger characterizes her performance issues as "picayune." (Pl.'s Resp., at 12.) Nonetheless, she provides no evidence that her shortcomings were insufficient to warrant her termination; for instance, she does not indicate that other employees who had similar performance issues were not terminated. Courts are to "afford substantial latitude to employers in making discipline related decisions, and are reluctant to act as a super personnel department that second guesses employers business judgments.'" *Salguero v. City Of Clovis*, 366 F.3d 1168, 1177 (10th Cir. 2004) (internal quotation omitted). CHIC's complaints regarding her performance are not so trivial as to constitute some sort of per se pretext.

In general, not only does Rosenberger fail to meet her prima facie burden with any reference to evidence in the record, she wholly fails to meet her Rule 56(e)

9

burden to respond to CHIC's case with affidavits or otherwise.[8]  Consequently, I find that Rosenberger has failed to meet her burden of demonstrating that genuine issues of material fact remain regarding her ADA claim, and it will be dismissed.  As a result, her CADA claim should be dismissed as well.  *See Colo. Civil Rights Comm'n v. Big O Tires, Inc.*, 940 P.2d 397, 400 (Colo. 1997) (adopting *McDonnell Douglas* framework for claims arising under CADA).

  CHIC next argues that Rosenberger's invasion of privacy claims must be dismissed.  Colorado authorizes tort actions for invasions of privacy based on both unreasonable public disclosure of private facts, *Ozer v. Borquez*, 940 P.2d 371, 377 (Colo. 1997) and for intrusions into seclusion.  *Doe v. High-Tech Inst., Inc.*, 972 P.2d 1060, 1067 (Colo. Ct. App. 1998).  However, CHIC first misconstrues Rosenberger's claims as arising under § 1983 and argues that they must be dismissed as CHIC is not a government actor.  Because Rosenberger's claims arise under state tort law, this argument fails

  CHIC next argues that Rosenberger waived her right to privacy by assenting to Ramsel's presence in the emergency room and by accepting aid from her.  *See Donahue v. Warner Bros. Pictures*, 194 F.2d 6, 13 (10th Cir. 1952) (the right of privacy

---

[8]The Tenth Circuit instructs that judges "have a limited and neutral role in the adversarial process, and [should be] wary of becoming advocates who comb the record of previously available evidence and make a party's case for it."  *Adler v. Wal-Mart Stores, Inc.* 144 F.3d 664, 672 (10th Cir. 1998).

"may be waived completely or only in part"). However, the facts are disputed as to whether Rosenberger requested Ramsel's presence or instead asked Triller not to bring Ramsel to the ER. Furthermore, CHIC does not indicate why either Rosenberger's alleged assent to Ramsel's presence or her accepting of aid from her should be construed as a waiver of her right not to have her private information disclosed to third parties. Finally, even if Penrose's "need to know" policy constitutes a defense to a tortious disclosure of private information–a proposition CHIC fails to support with authority–CHIC does not indicate why the disclosure of the fact that Rosenberger had suffered an episode and was treated in the ER, as opposed to the disclosure of the mere fact that Rosenberger had a seizure disorder, was necessary under the policy. Consequently, CHIC fails to demonstrate that it is entitled to judgment as a matter of law on Rosenberger's two invasion of privacy claims.

Alternatively, CHIC suggests that I should refuse to exercise pendent jurisdiction over these two claims.

> A district court has discretion whether to exercise supplemental jurisdiction over state law claims once the federal question has been dismissed. 28 U.S.C. § 1367(c). 'In making its determination, the district court should take into account generally accepted principles of judicial economy, convenience, and fairness to the litigants,'. . . [as well as] the particular circumstances of the case including the nature and extent of the pretrial proceedings.

*Olcott v. Delaware Flood Co.* 76 F.3d 1538, 1550 (10th Cir. 1996) (*quoting Growth Horizons, Inc. v. Delaware County*, 983 F.2d 1277, 1284 (3d Cir.1993)). *See also Thatcher Enterprises v. Cache County Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990)

("[t]he district court has discretion to try state claims in the absence of any triable federal claims; however, that discretion should be exercised in those cases in which, given the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction").

All pretrial proceedings, including discovery, have been completed in this case. Essentially, the only thing that remains is to try the case, and it is set for a four-day jury trial commencing in a little more than two months. Under these circumstances, I find that the nature and extent of pretrial proceedings, as well as the principles of judicial economy, convenience, and fairness to the litigants all weigh in favor of my exercising pendent jurisdiction over Rosenberger's remaining two claims.

Accordingly, it is ordered:

1. Defendant's motion for summary judgment, filed November 5, 2004 (Docket # 19), is granted in part and denied in part.

2. Plaintiff's first claim, asserting a violation of the ADA, and second claim, asserting a violation of the CADA, are dismissed with prejudice.

3. This case remains pending on Plaintiff's third and fourth claims.

DATED at Denver, Colorado, on August 15, 2005.

BY THE COURT:

/s/ Walker D. Miller
United States District Judge